# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **L.H.**

**No. 17-0769** (Wood County 15-JA-18)

## MEMORANDUM DECISION

Petitioner Father, J.A., by counsel George M. Torres, appeals the Circuit Court of Wood County's July 10, 2017, order terminating his parental rights to L.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Robin S. Bonovitch, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him a less-restrictive alternative than terminating his parental rights and in relying on West Virginia Code § 49-6-5b(a)(1)[2] and his incarceration in making its decision to terminate his parental rights. Petitioner also argues that the circuit court erred in ruling that he is not a psychological parent of H.A.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2015, the DHHR filed an abuse and neglect petition against petitioner and his girlfriend, the mother of L.H., alleging that the mother abused drugs during her pregnancy with the child. The petition further alleged that L.H. was born addicted to drugs and suffered withdrawal symptoms that required him to remain hospitalized for nearly three weeks after he

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

was born. The petition also alleged that petitioner admitted that he and the child's mother abused drugs during her pregnancy with L.H. and that he continued to abuse drugs, although he was participating in a drug court program. Petitioner was convicted of a felony drug charge in 2014 and was placed on probation and permitted to participate in the Wood County Drug Court beginning in January of 2015.

In August of 2015, the circuit court held an adjudicatory hearing after several continuances. Petitioner stipulated that he continued to use Suboxone due to his addiction to controlled substances and admitted that he could not take care of the child due to his drug addiction. Petitioner was adjudicated as an abusing parent. The circuit court granted him a post-adjudicatory improvement period. In November of 2015, the circuit court held a review hearing. According to the DHHR, petitioner had been somewhat compliant with his post-adjudicatory improvement period. However, a brief period of incarceration affected petitioner's ability to fully comply with his post-adjudicatory improvement period and caused him to miss parenting sessions, visitations, and delay a psychological evaluation.

In January of 2016, the circuit court held a second review hearing regarding petitioner's post-adjudicatory improvement period. The DHHR submitted an update that provided that petitioner was "fairly compliant" with the terms and conditions of his improvement period. However, the update also noted that petitioner participated in only one parenting session per week, although he was scheduled for two sessions per week. Further, the update noted that petitioner was late for some of his visits and that he continued to have contact with the child's mother, which was a violation of the terms of his drug court program. In March of 2016, the circuit court held a review hearing at which petitioner was granted a three-month extension to his post-adjudicatory improvement period. However, the DHHR's update to the circuit court reported concerns regarding petitioner's lack of communication with his caseworker; missed visits with little notice; and continued contact with the child's mother, in violation of the conditions of petitioner's drug court participation. This same month, the mother gave birth to another child, H.A. Petitioner had several supervised visits with H.A. in March, April, and May of 2016. Although petitioner believed this child was his, DNA testing ruled out any possibility that petitioner was the father of this child.

In May of 2016, the circuit court held a review hearing regarding petitioner's extended post-adjudicatory improvement period. The DHHR reported that petitioner failed to attend some parenting and adult life skills training as scheduled and missed visitations. Further, petitioner tested positive for synthetic marijuana, otherwise known as "K-2." Based on this positive drug screen, as well as other infractions of the drug court program, petitioner was terminated from the drug court program and his original criminal sentence of one to five years for conspiracy to commit a felony was invoked. In June of 2016, the circuit court held a final review hearing wherein it noted petitioner's discharge from the drug court program and his incarceration. The circuit court found that petitioner had "failed to follow through with most of the terms and conditions of his improvement period." In August of 2016, the circuit court held a dispositional hearing wherein petitioner was granted a dispositional improvement period, despite his incarceration.

In January of 2017, the circuit court revoked petitioner's dispositional improvement period, finding that his incarceration prevented him from participating in its terms and conditions. During petitioner's year-long term of incarceration, the circuit court continued the dispositional hearing multiple times. Petitioner was released from incarceration on May 12, 2017. In May of 2017, the circuit court held a dispositional hearing wherein petitioner moved for an additional dispositional improvement period. The DHHR moved for termination of petitioner's parental rights based upon his failure to successfully correct the conditions of abuse and neglect or successfully participate in services during his lengthy improvement period. The DHHR also moved for the termination of petitioner's parental rights pursuant to West Virginia Code § 49-6-5b(a)(1), as the child had been in foster care for twenty-seven continuous months at the time of disposition, twenty-one of those months having occurred after the adjudicatory hearing.

In July of 2017, the circuit court issued an order terminating petitioner's parental rights finding that he failed to successfully complete the terms and conditions of his improvement period, despite services and a lengthy period in which he was not incarcerated. Further, the circuit court found that petitioner remained unable to care for the child due to his drug abuse. Additionally, the circuit court found that petitioner was neither the birth father, nor a psychological father of H.A. Finally, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of his parental rights served the best interests of the child. The circuit court terminated petitioner's parental rights in its July 10, 2017, order.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

---

[3]The mother's parental rights were also terminated. According to the guardian and the DHHR, the permanency plan for L.H. is adoption in his current foster home.

First, petitioner argues that the circuit court erred in denying him a lesser alternative than the termination of his parental rights. He asserts that he was "fairly compliant," "somewhat compliant," and/or "compliant" during the eight months that he participated in his post-adjudicatory improvement period. He further argues that he participated in the improvement period by attending supervised visits, life skills, and parenting classes. However, petitioner admits that he could not participate in services while he was incarcerated. Further, petitioner admits that he continued to use drugs, tested positive on a drug screen, and missed visitations, adult life skills and parenting classes during his improvement period. Finally, petitioner argues that his parental rights are fundamental rights protected by the Due Process guarantees of the fifth and fourteenth amendments of the United States Constitution and that a less-restrictive alternative than termination of parental rights should have been employed. We disagree.

West Virginia Code § 49-6-5(a)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-6-5(b)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

Here, it is clear that petitioner failed to comply with the conditions of his improvement periods and failed to remedy the conditions of abuse and neglect. During his improvement periods, petitioner continued to use drugs, as evidenced by his positive drug screen for synthetic marijuana, or "K-2," his discharge from the drug court program, and his subsequent incarceration. Further, the DHHR established that petitioner missed visits and failed to attend some parenting and adult life skills training classes during the time in which he was not incarcerated. At the final review hearing, the circuit court found that "petitioner failed to follow through with most of the terms and conditions of his improvement period." Finally, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare.

Further, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error.

4

Next, petitioner argues that the circuit court erred in relying on West Virginia Code § 49-6-5b(a)(1)[4] and his incarceration in making its decision to terminate his parental rights rather than consider the totality of the circumstances. Petitioner also argues that the circuit court failed to consider the delay in the proceedings caused by obtaining and disseminating the mother's medical records. We disagree.

As discussed above, under West Virginia Code § 49-6-5(a)(6), circuit courts are to terminate parental rights when there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Although the circuit court did consider the amount of time L.H. had been in foster care and petitioner's incarceration, it did not base its decision to terminate petitioner's parental rights solely on those issues. The circuit court found that, at the time of the dispositional hearing, L.H. had spent nearly his entire life up to the age of two years and five months in foster care as a direct result of petitioner's chronic drug abuse and his failure to successfully complete a court-supervised recovery program and a court-supervised improvement period. Petitioner's failure to comply with the terms and conditions of drug court ultimately led to his incarceration. Further, although petitioner could not participate in his improvement period while he was incarcerated, the circuit court found that petitioner failed to comply with the terms and conditions of his post-adjudicatory and dispositional improvement periods even at times when he was not incarcerated. The circuit court considered petitioner's failure to correct the conditions of abuse and neglect as evidenced by his continued use of drugs. The record on appeal clearly shows that the circuit court considered the totality of the circumstances and found no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, petitioner argues that the circuit court erred in ruling that petitioner is not a psychological parent of H.A. Petitioner asserts that he had supervised visitations with H.A., and during these visits, believed that H.A. was his biological son. We do not find this argument compelling. We have held that

> A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian.

Syl. Pt. 3, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005).

---

[4]West Virginia Code § 49-6-5(a)(1) provides "the [DHHR] shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: [i]f a child has been in foster care for fifteen of the most recent twenty-two months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is sixty days after the child is removed from the home[.]"

Here, petitioner does not argue that he had a substantial relationship with H.A. Petitioner spent approximately thirteen hours with H.A., all of which were supervised visitations. H.A. never lived with petitioner and was one year old at the time of the dispositional hearing. We find no error in the circuit court's ruling that petitioner is not a psychological parent of H.A.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 10, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  January 8, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker